Ian M. Seruelo (SBN 303760)
The Law Offices of Ian M. Seruelo
7710 Balboa Avenue, Suite 325
San Diego, CA 92111
Telephone: (281) 455 – 2462
ianmseruelo@gmail.com

Attorney for Petitioner-Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| Hugo Barrios Ramirez<br><br>Petitioner-Plaintiff,<br><br>v.<br><br>FERETI SEMAIA, Warden, Adelanto ICE Processing Center; ERNESTO SANTACRUZ, JR., Los Angeles Field Office Director, U.S. Immigration and Customs Enforcement; DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and TODD BLANCHE, Acting Attorney-General, U.S. Department of Justice,<br><br>Defendant-Respondents. | Case No. 26-5738<br><br>Agency File No. A 095 810 177<br><br>PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241<br><br>DETAINED |

**INTRODUCTION**

1. Petitioner Hugo Barrios Ramirez ("Mr. Barrios") is a 40-year-old Mexican national who last entered the United States in 2019. He has resided in California for over six years now and has lived with his family in Santa Ana, California.

2. He is married to Giovanna Jennifer Melendez, a U.S. Citizen with whom he shares three young children, all U.S. Citizens: Zoe Grisel Barrios (14 years old), Hugh Damon Barrios (12 years old), and Maximilian Barrios (8 years old). All the children were born in California.

3. Petitioner is currently in Withholding-Only removal proceedings. On October 24, 2024, an Immigration Judge denied his application for relief, and Petitioner timely filed an appeal with the Board of Immigration Appeal (BIA). The case is currently still pending with the BIA, hence the Immigration Judge's decision is not yet final.

4. Petitioner was released from immigration custody more than six years ago pursuant to a bond order issued by an Immigration Judge on July 2, 2020. The Immigration Court, in a bond hearing, determined that he was neither a flight risk nor a danger to the community when it ordered his release from custody on an $8,000 bond. The immigration Judge further ordered that Petitioner "shall not commit any crime under any federal, state, or local laws and ordinances."

5. Petitioner was abruptly re-detained by U.S. Immigration and Customs Enforcement (ICE) and jailed recently for no legitimate reason on September 10, 2026. ICE officials re-detained him even though he did not violate the terms of his bond and he religiously complied with their requirement for him to regularly check in with ICE.

6. Since his release from detention in 2020, the Petitioner did not commit any crime of any kind. Nor do the Petitioner present risks of flight that justify re-detention. Yet ICE decided to unlawfully re-detain him in prison-like conditions, keeping him separated from his spouse, young children, his extended family, and his community.

7. ICE provided Petitioner with no pre-deprivation hearing prior to his re-detention at the ICE check-in to determine whether material changes in their circumstances warrant their re-

detention based on danger to the community or risk of flight, despite a growing consensus among United States district courts that such a hearing is necessary in similar circumstances.

8. Petitioner's re-detention under these circumstances violates his right to substantive and procedural Due Process, as it is not justified by a legitimate government purpose. Additionally, under *Mathews v. Eldridge*, 424 U.S. 319 (1976), his fundamental liberty interest far outweighs the government's interest in detaining him, and the risk of error is great where, as here, there has been no pre-deprivation process to ensure his loss of liberty is justified. For similar reasons, his re-detention also contravenes the Immigration and Nationality Act (INA).

9. Petitioner's arrest occurred on September 10, 2026, when he checked in with ICE in its Santa Ana office.

10. After his arrest, ICE transferred Petitioner to the Adelanto ICE Processing Center in Adelanto, California, where he has languished in detention for over two weeks now.

11. Accordingly, Petitioner seeks release and challenge his detention as a violation of the Due Process Clause of the Fifth Amendment, and the INA.

12. The Petitioner respectfully requests that this Court issue the Writ of Habeas Corpus commanding Respondents his immediate release from custody, and enjoin Respondents from re-detaining him without a pre-deprivation hearing before a neutral decision-maker at which the Respondents must prove material changes in circumstances justify re-detention. Petitioner seeks that relief under the federal habeas statute, 28 U.S.C. 2241, which is the proper vehicle for challenging civil immigration detention. See Doe v. Garland, 109 F.4th 1188, 1194 (9th Cir. 2024) (noting that a noncitizen's challenge to his present confinement falls within the "core of habeas").

## CUSTODY

13. The Petitioner is currently in physical custody of ICE at the Adelanto ICE Processing Center located in Adelanto, California. Petitioner is under the direct control and custody of Respondents and Respondents' agents.

## JURISDICTION

14. This action arises under the United States Constitution and the Immigration and Nationality Act of 1952, 8 U.S.C. § 1101 et seq. ("INA").

15. This Court has jurisdiction over this petition for writ of habeas corpus under 28 U.S.C. § 2241 (habeas corpus, which provides that "[w]rits of habeas corpus may be granted by . . . the district courts." This Court also has jurisdiction under 28 U.S.C. § 1331 because this is a "civil action arising under the . . . laws . . . of the United States." (federal question). Furthermore, this Court has jurisdiction under 28 U.S.C. § 1361 (mandamus); art. I, § 9, cl. 2 of the U.S. Constitution ("Suspension Clause"); U.S. Const. amend. V (the Due Process Clause of the U.S. Constitution); and jurisdiction over declaratory judgment, brought pursuant to 28 U.S.C. §§ 2201-02.

16. Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. See *Zadvydas v. Davis,* 533 U.S. 678 (2001). This Court may grant relief pursuant to 28 U.S.C. §§ 2201-02, 28 U.S.C. § 2241, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

17. Venue in this District is proper under 28 U.S.C. § 1391(e)(2) because the Officer in Charge who makes custody decisions in Petitioner's case is located within this judicial district and Petitioner is detained within this judicial district. Moreover, venue is proper under § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this District.

18. Moreover, Mr. Barrios is detained in the Adelanto ICE Processing Center, within the Los Angeles Division, and Respondent Semaia is his immediate custodian. See 28 U.S.C. §§ 2241(d), 1391(e).

**PARTIES**

19. Petitioner Hugo Barrios Ramirez is currently detained by Respondents at the Adelanto ICE Processing Center, an immigration detention facility in Adelanto, California. He has been in ICE custody since September 10, 2026.

20. Respondent Fereti Semaia ("Semaia") is the Warden of the Adelanto ICE Processing Center facility, where Petitioner is currently detained. Semaia is responsible for the day-to-day operations and confinement of noncitizens detained at that facility. He acts at the direction of Respondents Santacruz, Venturella, and Mullin. He is a legal custodian of the Petitioner and is named in his official capacity.

21. Respondent Ernesto Santacruz ("Santacruz") is the current Field Office Director responsible for the Los Angeles Field Office of ICE. He acts at the direction of Respondents Venturella and Mullin. ICE is responsible for local custody decisions relating to non-citizens charged with being removable from the U.S., including the arrest, detention, custody status, and removal of non-citizens. The Los Angeles Field Office's area of responsibility includes Los Angeles Metropolitan Area (Counties of Los Angeles, Orange, Riverside, San Bernardino), and Central Coast (Counties of Ventura, Santa Barbara and San Luis Obispo) in California. He is a legal custodian of Petitioner and is named in his official capacity. Adelanto is part of the San Bernardino County.

22. Respondent David Venturella ("Venturella") is the Acting Director of ICE. He has authority over the actions of Respondents Semaia and Santacruz. ICE is responsible for local custody decisions relating to non-citizens charged with being removable from the U.S., including the arrest, detention, custody status, and removal of non-citizens. Venturella is a legal custodian of the Petitioner and is named in his official capacity.

23. Respondent Markwayne Mullins ("Mullins") is the Secretary of the United States Department of Homeland Security (DHS). He has authority over the actions of all other DHS

Respondents in this case, as well as all operations and federal agencies of DHS, including ICE. He is a legal custodian of the Petitioner and is named in his official capacity.

24. Respondent Tood Blanche ("Blanche") is the acting attorney General of the United States Department of Justice (DOJ). He has authority over immigration policies that are implemented by all the Respondents in this case. He is a legal custodian of the Petitioner and is named in his official capacity.

## EXHAUSTION OF REMEDIES

25. No statutory exhaustion requirement applies. *See* 8 § U.S.C. 2241; *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). Therefore, exhaustion is not jurisdictionally required.

26. Additionally, ICE's refusal to honor the bond previously posted leaves no administrative avenue to secure release. Mr. Barrios was released by ICE after posting $8,000 bond on or around July of 2020. He has not committed any crime or violated any terms of his bond. More, he has complied with all his reporting requirements.

27. Therefore, Mr. Barrios has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action.

## STATEMENT OF FACTS

### I. PETITIONER WAS UNLAWFULLY ARRESTED AND REMAINS DETAINED DESPITE HIS PRIOR RELEASE FROM DHS AND COMPLIANCE OF BOND REQUIREMENTS

28. Petitioner, Mr. Barrios is a national of Mexico. He last entered the United States on or about the December 12, 2019.

29. Petitioner was apprehended by immigration agents after he re-entered the United States illegally from Mexico at the end of 2019 and was detained at the Otay Mesa Detention Center.

30. Petitioner was removed to Mexico in January 2010 after he was placed in removal proceedings due to his guilty plea to a criminal charge under California Penal Code Section 261.5(d), the offense of having sexual relations with a minor – his then girlfriend Giovanna Jennifer Melendez, who is the “love of his life.”

31. He was then 23 years old, and his U.S. Citizen girlfriend, Giovanna, was 16 years old. They are now happily married and are raising three children, who were all born in California.

32. The conviction was vacated in 2023 under Penal Code Section 1473.7(a)(1) by the Superior Court of California, County of Orange. The order concludes that the conviction was “legally invalid due to a prejudicial error damaging” the Petitioner’s “ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse consequences of a conviction or sentence.”

33. After more than ten years of living in Mexico, with his wife and children, Mr. Barrios was forced to re-enter the United States for his safety. He was threatened, extorted, and abducted multiple times by gangs in Mexico due of his successful business ventures. He ran a construction company with a friend and a gaming shop.

34. His wife and children had no problem returning to the United States because they were all US citizens. Mr. Barrios, fearing for his life, decided to cross illegally.

35. Mr. Barrios was apprehended at the border by Immigration Agents on or around December 12, 2019, and was detained at the Otay Mesa Detention Center. An asylum officer who interviewed Mr. Barrios determined that he has reasonable fear of return to Mexico. This allowed him to present his claim for Withholding of Removal and relief under the Convention Against Torture.

36. On or around July of 2020, the US Department of Homeland Security ("DHS") released Mr. Barrios on a $8,000 bond after the Immigration Judge found that he is not a danger to the community and the bond amount would offset any potential flight risk.

37. On October 23, 2024, Mr. Barrios's application for immigration relief was denied. He timely filed an appeal before the Board of Immigration Appeals (BIA), which remains pending until now.

38. Since his release from detention in July 2020, Mr. Barrios had to report to ICE Santa Ana regularly. For about eight months since his release, he had to wear an ankle monitor and checked-in every month through an ICE app installed in his phone.

39. However, Mr. Barrios was very happy to reunite with his wife and his children, who all missed their father. Their extended family in Santa Ana and Los Angeles were also very happy to see Mr. Barrios and their family together after all the hardship they went through,

40. Around the start of the second quarter of 2021, Mr. Barrios' ankle monitor was removed but he reported in-person every month at the ICE office.

41. Then, around 2022, ICE initiated changes in their system. For several years until they arrested him, an ICE officer called him between 8:00 AM to 8:00 PM once a month and he would answer their questions to confirm he is still living at the same address, with his spouse. Then he would send photos of his locations to ICE.

42. Mr. Barrios has not committed any crime or violated any terms of his bond. On top of that, he has complied with all the check-in and reporting requirements of ICE.

43. However, ICE decided to arrest and re-detain him on September 10, 2021 without any kind of process that would allow him to challenge the change in his custody.

44. Mr. Barrios's wife and three young children are now very distraught and traumatized by his sudden arrest and re-detention. They have not only lost a husband and father but also the ability to support the needs of their young children.

45. ICE continues to hold Mr. Barrios due in violation of his constitutional rights. He seeks habeas relief, arguing that his arbitrary arrest and re-detention exceed statutory limits and violates the Fifth Amendment.

## LEGAL FRAMEWORK

46. Habeas corpus relief extends to a person "in custody under or by color of the authority of the United States" if the person can show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241 (c)(1), (c)(3); see also *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 (11th Cir. 2008) (holding a petitioner's claims are proper under 28 U.S.C. section 2241 if they concern the continuation or execution of confinement).

47. "[H]abeas corpus is, at its core, an equitable remedy," *Schlup v. Delo*, 513 U.S. 298, 319 (1995), that "[t]he court shall … dispose of [] as law and justice require," 28 U.S.C. § 2243. "[T]he court's role was most extensive in cases of pretrial and noncriminal detention." *Boumediene v. Bush*, 553 U.S. 723, 779–80 (2008). "[W]hen the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority to make a determination in light of the relevant law and facts and to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id*. at 787.

**I. SUBSTANTIVE DUE PROCESS CONSTRAINTS ON IMMIGRATION DETENTION**

48. The Due Process Clause of the Fifth Amendment protects all "person[s]" from deprivation of liberty "without due process of law." U.S. Const. amend. V.

49. While the immigration laws afford ICE discretion over its decisions to arrest, detain, and revoke prior release decisions, those decisions are nonetheless constrained by the laws Congress has enacted and the requirements of the Constitution, including the Due Process Clause. *See generally Zadvydas v. Davis*, 533 U.S. 678. 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

50. This is because "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

51. Immigration detention only comports with Due Process when it furthers the government's goals of "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Id*. (internal citations omitted). ICE detention violates substantive Due Process where it is not justified by flight risk or danger concerns. *See id.*

52. For that reason, ostensibly "nonpunitive" ICE detention pursuant to a blanket policy under which the agency claims authority to arrest and detain all noncitizens who it alleges are not lawfully present in the United States, without regard for whether they are a flight risk or danger, would violate the Due Process Clause. *See id.* So too would ICE detention for the purposes of meeting quotas, punishment, deterring immigration, or encouraging voluntary deportation. *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 188–89 (D.D.C. 2015) (observing that "[i]n discussing civil commitment more broadly, the [Supreme] Court has declared such 'general

deterrence' justifications impermissible" and finding likely contrary to Due Process a deterrence policy pursuant to which DHS detained "one particular individual" for purposes of "sending a message of deterrence to other[s ] who may be considering immigration" (citing Kansas v. Crane, 534 U.S. 407, 412 (2002)).

53. All such detentions would be unlawful because they bear no reasonable relation to a legitimate government purpose. *See id.*; *Demore v. Kim*, 538 U.S. 510, 532–33 (Kennedy, J., concurring); *Kansas v. Hendricks*, 521 U.S. 346, 361–62 (1997); *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

## II. PROCEDURAL DUE PROCESS CONSTRAINTS ON THE DETENTION OF INDIVIDUALS WHO WERE PREVIOUSLY RELEASED

54. Procedural Due Process ensures that no persons are deprived of their liberty absent a fair process. Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), courts evaluate procedural Due Process by balancing (1) the private interest affected; (2) the risk of erroneous deprivation of such interest; and (3) the government's interest. *Id.* at 335.

55. "[T]he liberty [of a person released from government custody] is valuable and must be seen as within the protection of the [Due Process Clause]." *Morrisey v. Brewer*, 408 U.S. 471, 482 (1972).

56. "[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp 3d 1025, 1032 (N.D. Cal. 2025) (citing *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal.

Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019)).

57. Courts in many districts have joined a growing chorus of district courts that have recognized that noncitizens have a significant liberty interest in both "continued freedom after *release on own recognizance*," *Alegria Palma v. Larose*, No. 25-cv-1942-BJC-MMP, ECF No. 14, at *6 (S.D. Cal. Aug. 11, 2025) (emphasis added), and in "freedom from imprisonment" after "the government grants a [noncitizen] *parole* into the country," *Sanchez v. LaRose*, No. 25-CV-2396-JESMMP, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025) (emphasis added). *See also Prieto-Cordova*, No. 25-cv-2824-CAB-DDL, 2025 WL 3228953 (S.D. Cal. Nov. 19, 2025); *Faizyan v. Casey*, No. 25-cv-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025); *Ramazan M. v. Andrews*, No. 25-cv-01356-KES-SKO (HC), 2025 WL 3145562 (E.D. Cal. Nov. 20, 2025); *Gomez Vilela v. Robbins*, No. 25-cv-01393-KES-HBK (HC), 2025 WL 3101334 (E.D. Cal. Nov. 6, 2025); *Pablo Sequen v. Albarran*, No. 25-cv-06487-PCP, 2025 WL 2935630 (N.D. Cal. Oct. 15, 2025); *Hyppolite v. Noem*, No. 24-cv-4304 (NRM), 2025 WL 2829511 (E.D. N.Y. Oct. 6, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025); *Ramirez Tesara v. Wamsley*, No. 25-cv-01723-MJPTLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025); *E.A. T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130 (W.D. Wash. Aug. 19, 2025).

58. "Where, as here, [the petitioner] has not received any bond or custody ... hearing, the risk of an erroneous deprivation [of liberty] is high because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp 3d at 1035 (citing *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025)) (cleaned up). Indeed, where a petitioner "was

previously released following a determination that he posed no flight risk or danger to the community, and absent any new evidence showing a material change in circumstances, the risk of erroneous detention without a hearing is substantial." *Alegria Palma*, No. 25-cv-1942-BJCMMP at *6 (ordering petitioner's immediate release where he was re-detained without pre-deprivation hearing).

59. The requirement of an individualized determination is even stronger in cases of re-detention because the prior "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). "[T]o be lawful" the re-detention "must be based on evidence that the circumstances relevant to that original release decision have changed." *Saravia*, 280 F.Supp. 3d at 1196.

60. "To satisfy due process, those changed circumstances must represent individualized legal justification for detention." *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025) (internal citations omitted).

61. The government can claim no interest in re-detention where there are no changed circumstances going to flight risk or danger sufficient to warrant re-detention. *See Pinchi,* 792 F. Supp 3d at 1036 ("The government does not claim that any material circumstances have changed that would warrant reassessment of Ms. Garro Pinchi's risk of flight or dangerousness, and it has articulated no other reason for her detention."). Even if the government asserted the existence of such changed circumstances, its interest in denying a pre-deprivation hearing to prove that claim is negligible, particularly because custody hearings are a routine practice for immigration courts. Compared to the "staggering" "costs to

the public of immigration detention," *Hernandez*, 872 F.3d at 996, "[t]he effort and cost required" of providing a hearing "is minimal." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).

62. Thus, detention absent a pre-deprivation hearing establishing that changed circumstances justify re-detention violates procedural Due Process.

## III. THE STATUTORY FRAMEWORK GOVERNING PETITIONER'S DETENTION

63. Section 1226(a) governs the detention of noncitizens "inside the United States" and "present in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018).

64. The Petitioner was unquestionably detained in the interior of the country at his ICE check-in appointment, more than six years after being released after posting of bond.

65. Immigration detention "has two regulatory goals: ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 678 (internal citations omitted); *see also* 8 U.S.C. 1226(a), (b); 8 C.F.R. 1236.1(c)(8).

66. Those previously released by DHS, like the Petitioner, have necessarily been deemed neither a flight risk nor a danger. 8 C.F.R 1236.1(c)(8) (authorizing release of noncitizens under 1226(a) if they "would not pose a danger to property or persons," and are "likely to appear for any future proceeding"); 8 C.F.R. 212.5(b) (authorizing parole from custody of noncitizens deemed "neither a security risk nor a risk of absconding").

67. In cases of individuals previously released by DHS, re-detention under section 1226(a) requires an individualized determination of a material change in circumstances relating to flight risk or danger. *See Ortega*, 415 F.Supp.3d at 968 ("DHS re-arrests individuals only after a 'material' change in circumstances." (citing *Saravia*, 280 F.Supp.3d at

1197)); *see also Matter of Sugay*, 171 I&N Dec. 637, 640 (B.I.A. 1981) ("[W]here a previous bond determination has been made by an immigration judge, no change should be made by [DHS] absent a change of circumstance.").

68. Absent a material change in circumstances, the re-detention of noncitizens previously released by DHS violates the INA because it does not serve the purpose of the statute.

## CLAIMS FOR RELIEF

### COUNT ONE
### VIOLATION OF THE FIFTH AMENDMENT DUE PROCESS CLAUSE
### Substantive Due Process
### (Against All Respondents)

69. Petitioner realleges and incorporates by reference each and every allegation contained above.

70. The Due Process Clause of the Fifth Amendment forbids the government from depriving any person of liberty without due process of law. U.S. Const. amend. V. *See generally Reno v. Flores*, 507 U.S. 292 (1993); *Zadvydas*, 533 U.S. 678; *Demore v. Kim*, 538 U.S. 510 (2003).

71. "The Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

72. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.

73. Immigration detention only comports with Due Process when it furthers the government's goals of "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Id*. (cleaned up).

74. Immigration detention that does not serve the legitimate government purposes of preventing flight or mitigating danger violates substantive Due Process. *Id.*

75. Immigration detention pursuant to a blanket policy under which ICE claims authority to arrest and detain all noncitizens who it alleges are not lawfully present in the United States, without regard for whether they are a flight risk or danger—whether for deterrence, to satisfy a quota, or for other purposes that do not bear a reasonable relation to preventing danger or flight risk—violates the Due Process Clause. *Id.*; *Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring).

76. Petitioner's arrest and re-detention violate the Due Process Clause because it is not rationally related to any legitimate government purpose.

**COUNT TWO**
**VIOLATION OF THE FIFTH AMENDMENT DUE PROCESS CLAUSE**
**Procedural Due Process**
**(Against All Respondents)**

77. Petitioner realleges and incorporates by reference each and every allegation contained above.

78. "In the context of immigration detention, it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez*, 872 F.3d at 990 (cleaned up).

79. Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), courts evaluate procedural Due Process by balancing 1) the private interest affected; 2) the risk of erroneous deprivation of such interest; and 3) the government's interest. *Id.* at 335. Immigration detention always implicates the liberty interest in "freedom from imprisonment." *Zadvydas*, 533 U.S. at 690. In addition, when the government releases someone, they retain a liberty interest in their on-going release from government custody. *Morrisey*, 408 U.S. at 482; *Alegria Palma*, No. 25-cv- 1942-BJC-MMP at *6; *Sanchez*, 2025 WL 2770629 at *3.

80. Where a detained individual does not receive any pre-deprivation hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp 3d at 1035 (cleaned up); *Alegria Palma*, No. 25-cv-1942-BJC-MMP at *6 ("Given that Petitioner was previously released following a determination that he posed no flight risk or danger to the community, and absent any new evidence showing a material change in circumstances, the risk of erroneous detention without a hearing is substantial."). The government can claim no interest in re-detention where there are no changed circumstances going to flight risk or danger that warrant re-detention. *See Pinchi,* 792 F. Supp 3d at 1035. Thus, a fair process for proving the existence of such changed circumstances satisfies any government interest in re-detention.

81. Because the government has not afforded the Petitioner pre-deprivation hearings to determine whether changed circumstances going to flight risk or danger warrant his re-detention, his detention violates procedural Due Process.

**COUNT THREE**
**VIOLATION OF IMMIGRATION AND NATIONALITY ACT**
**8 U.S.C. 1226(a)**
**(Against All Respondents)**

82. Petitioner realleges and incorporates by reference each and every allegation contained above.

83. Detention under 8 U.S.C. 1226(a) must serve a legitimate government purpose of mitigating danger or preventing flight. *See Zadvydas*, 533 U.S. at 690; 8 U.S.C. 1226(a), (b); 8 C.F.R. 1236.1(c)(8).

84. Petitioner's prior release by DHS necessarily reflects a determination that the noncitizen is neither a flight risk nor a danger to the community. 8 C.F.R. 1236.1(c)(8) (outlining requirements for release on recognizance); 8 C.F.R. 212.5(b) (outlining requirements for parole).

85. Thus, Petitioner's re-detention pursuant to 8 U.S.C. 1226(a) requires an individualized determination of a material change in circumstances going to flight risk or danger in order for their re-detention to serve a regulatory purpose.

86. Petitioner's re-detention violates the INA where he was not afforded an individualized determination of a material change in circumstances related to flight risk or danger to justify re-detention.

**PRAYER FOR RELIEF**

Wherefore, the Petitioner respectfully prays that the Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Enjoin Respondents from transferring Petitioner outside of this judicial district pending litigation of this matter or his removal proceedings;

(3) Pursuant to 28 U.S.C § 2243, issue an Order to Show Cause directing Respondents to show why the Writ of Habeas Corpus should not be granted within three days of the filing of this petition;

(4) Issue a Writ of Habeas Corpus and order the immediate release of the Petitioner that also orders ICE to reinstate and honor the $8,000 bond that was already paid;

(6) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act as amended, 5 U.S.C § 504 and 28 U.S.C § 2412, and on any other basis justified by law; and

(7) Grant any other and further relief as the Court deems just and proper.

Dated: September 28, 2026

The Law Offices of Ian M. Seruelo

*/s/ Ian M. Seruelo*

Ian M. Seruelo, Esq.
ianmseruelo@gmail.com
Counsel for the Plaintiff-Petitioner

**VERIFICATION BY ATTORNEY ACTING ON MR. HUGO BARRIOS RAMIREZ'S BEHALF PURSUANT TO 28 U.S.C. §2242**

I am submitting this verification on behalf of Mr. Hugo Barrios Ramirez because I am his attorney. As Mr. Barrios's attorney, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: September 28, 2026

The Law Offices of Ian M. Seruelo

*/s/ Ian M. Seruelo*

Ian M. Seruelo, Esq.
ianmseruelo@gmail.com
Counsel for the Plaintiff-Petitioner